Filed 1/24/25  P. v. Velasquez CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>　Plaintiff and Respondent,<br><br>　　v.<br><br>RUBEN VELASQUEZ,<br><br>　Defendant and Appellant. | B333338<br><br>Los Angeles County<br>Super. Ct. No. NA085707 |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Tomson T. Ong, Judge.  Affirmed.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Shezad H. Thakor, Deputy Attorneys General, for Plaintiff and Respondent.

_____

**SUMMARY**

Penal Code section 1385, subdivision (c), as amended effective January 1, 2022 (section 1385(c)), requires the trial court to dismiss an enhancement "if it is in the furtherance of justice to do so," unless dismissal is prohibited by an initiative statute.  (§ 1385(c)(1).)  (All statutory citations are to the Penal Code.)  Section 1385(c) further specifies that nine enumerated mitigating circumstances "weigh[] greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."  (§ 1385(c)(2).)  One of the mitigating circumstances occurs when multiple enhancements are alleged in a single case, in which instance "all enhancements beyond a single enhancement shall be dismissed."  (§ 1385(c)(2)(B).)  Another mitigating circumstance exists when application of an enhancement could result in a sentence of over 20 years, in which instance "the enhancement shall be dismissed."  (§ 1385(c)(2)(C).)

In this appeal after his resentencing, defendant Ruben Velasquez contends the trial court was required to dismiss a 25-years-to-life firearm enhancement, and a five-year prior serious felony enhancement, based on the two mitigating circumstances just described.

We conclude, based on *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*) and multiple Court of Appeal decisions, that the trial court did not abuse its discretion.  We affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

**1.     The Crime**

Both parties recite the facts of the crime as we described them when we affirmed defendant's conviction, and we will do the same, omitting quotation marks.  (See *People v. Velasquez* (June 21, 2012, B232578) [nonpub. opn.].)

2

On May 17, 2010, between 10:00 p.m. and 10:30 p.m., defendant shot and killed Brandon Hanson at a bar. The killing, and many of the events leading up to the killing, were captured on videotape. At defendant's trial, his counsel told the jury, before any evidence was presented, that defendant pulled out a gun and shot the victim, but that it was a case of manslaughter, not murder. Events unfolded as follows.

At about 6:00 p.m., Angela Chavez, who was defendant's sister or stepsister, arrived at the bar with the victim Brandon Hanson, who was her boyfriend and a "regular" at the bar. After drinking for a while with her stepcousin, A.L., Chavez left the bar, picked up two other men in her car (Salvador Melena and Christopher Castaneda) and returned to the bar with them. Still later, Chavez left the bar again and returned with defendant.

The bar's videotape shows defendant and the victim shaking hands, apparently being introduced. Thereafter, the four-hour videotape shows no physical contact between the two until immediately before the shooting. After defendant arrived at the bar with Chavez, the victim sat in the back of the bar by himself, and "kept to himself." During this time, defendant and Chavez were drinking, dancing, taking photographs of each other, and "just hanging out." Defendant and Chavez were "bumping and grinding," "not really groping," but "rubbing against one another in a sexual manner . . . ." The victim was in the bar observing Chavez and defendant, but not getting involved. The bartender, J.G., thought the victim "seemed upset. Bothered, mostly," which J.G. thought was because of the way Chavez and defendant were dancing. But at no time does the videotape show the victim approaching or confronting defendant.

After the dancing, the videotape shows defendant taking off his sweatshirt and tank top. Defendant and Melena, one of the two men Chavez brought to the bar earlier, showed each other

3

their gang tattoos, and defendant took off his shirt to do so. Defendant had tattoos that showed him to be a West Side Wilmas gang member, and Melena had been a member of the same gang. When he took his shirt off, the video did not show that defendant had anything tucked in his waistband, front or rear.

After defendant put his sweatshirt back on, he walked out of the bar area. Almost immediately, the victim left his table and approached Chavez at the bar. Shortly after the victim began to talk to Chavez, defendant reentered the bar and went directly to the victim and Chavez. The videotape shows the butt of a handgun sticking out from defendant's pants that was not visible before he left the bar area.

The videotape shows that the victim continued to talk with Chavez, defendant took a step closer, and then defendant and the victim exchanged words with each other. The victim had his hands turned inward toward his (the victim's) chest as he was talking, and Chavez appeared to try to push defendant back, as did Melena. Castaneda (the other man Chavez brought to the bar earlier) and A.L. were also in the immediate proximity of the two men. Defendant threw a punch at the victim while "the victim's hands were down to his side." The victim staggered back, trying to regain his balance, and defendant reached to his (defendant's) back, "in the direction where we saw the butt of the gun," and brought his hand upward. The victim was "backed up to the bar," where he could not back up any further.

The victim made a sweeping motion with his left hand as defendant's hand went up, and then there was a muzzle flash. The victim slumped down, and defendant fired again as the victim slumped over. Then, the victim fell to the ground without using his hands to break his fall, and lay there motionless. Defendant leaned closer, bent over, and fired again twice into the victim's buttocks. Defendant then kicked the victim's body twice,

4

and stomped on his head.  Castaneda, who had been observing what was going on, kicked his left foot toward the victim's head, and defendant then "stomp[ed] straight down on [the victim's] head," making "three stomping motions on top of his head." Castaneda then raised his beer up, motioning in A.L.'s direction in "some type of salute," and defendant left with Castaneda just behind him.  They got into Chavez's car and Chavez drove them away.

The victim, who was shot five times, twice in the neck, bled out and died.  A short time after the shooting, the police stopped Chavez's car.  A police officer saw defendant, who was in the front seat, make a tossing motion toward the driver's seat floorboard, and found a revolver there with six live rounds and one spent casing in the cylinder.  Four other spent casings were found in the car.

In April 2011, a jury convicted defendant of murder in the first degree, and found true the allegation that he discharged a firearm proximately causing death.  The court imposed a prison sentence of 81 years to life.  The sentence consisted of 25 years to life for the murder, doubled to 50 years because of a prior strike; a consecutive 25 years to life for the firearm use; a consecutive determinate term of five years for a serious prior felony conviction; and a consecutive one-year term for a prior prison term.

We affirmed the conviction in our 2012 decision, in which the only claim on appeal concerned the admission of gang-related evidence.

2.    **The Resentencing Proceedings**

Effective January 1, 2022, the Legislature invalidated pre-2020 sentence enhancements for prior prison terms (except for sexually violent offenses) and required the courts to recall such sentences and resentence the defendants.  (§ 1172.75, subds. (a),

5

(c).)  The legislation also required the resentencing court to apply any other changes in law that reduced sentences or provided for judicial discretion to do so.  (§ 1172.75, subd. (d)(2).)  Among these was Senate Bill No. 81 (2021-2022 Reg. Sess.; Stats. 2021, ch. 721, § 1), adding subdivision (c) to section 1385, as described at the outset.

The Department of Corrections and Rehabilitation identified defendant as serving a term that included a prior prison term enhancement.  The sentencing court reviewed the case and on November 28, 2022, determined defendant "may be entitled to be resentenced."  The court appointed counsel and set a status conference to discuss procedures and a date for the resentencing hearing.

After various continuances, on August 23, 2023, defense counsel filed a motion for full resentencing, contending several ameliorative changes in the law applied to the case, first among them the section 1385(c) provisions on dismissal of enhancements.  Counsel argued defendant "does not pose a continued public safety risk when he is already serving an indeterminate life term for murder and he does not qualify for youthful offender parole or elder parole."

Defendant sought a total aggregate sentence of 35 years to life.  This would consist of 25 years to life (instead of 50) for the murder (by reconsidering a *Romero* motion (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497) to strike defendant's prior strike); "[i]mpos[ing] a lesser-included gun enhancement," adding "a consecutive 10 years" to the murder count (instead of 25 years); and striking the five-year enhancement for defendant's prior serious felony conviction.

At the resentencing hearing on August 25, 2023, the court (the same judge who sentenced defendant in 2011) stated it was "very familiar with the case," and had "read the [defense] brief in

6

its entirety." Defense counsel then submitted on the brief, and the court stated:

"Let me just indicate a couple of things. Okay. The first thing is that I asked for the C.D.C.R. disk because I want to know the full picture." The court outlined defendant's prison record. "On November 22nd, 2016, discipline for serious violation of using controlled substance based solely on positive test. [¶] On May 1st, 2017, disobeying an order, which is a serious violation. [¶] And he is guilty of all these charges. [¶] [On] May 30, 2017, behavior that could lead to violence. [¶] On July 24, 2017, battery with a deadly weapon. [¶] On December 2nd, 2018, battery on a prisoner. [¶] On July 18, 2019, battery on a prisoner. [¶] On August 5, 2021, which is very recent, possession of a deadly weapon. [¶] And he was absent twice on assignment on November 9, 2022, and December 8, 2022."

The court then stated that the resentencing motion was "very well written," but that "[t]his is a very hard case for [the defense]. I don't know if you read the appellate decision and also watched the video, but the whole murder was caught on video." The court described defendant's actions punching the victim, shooting him, firing more rounds when the victim was motionless on the floor, then kicking the victim in the head and stomping on his head. The court then observed the defense in its sentencing motion "made an issue" about the court having given an instruction on voluntary manslaughter, and explained why the court had given that instruction. (Defense counsel had said in his opening statement that he would try to prove voluntary manslaughter, and the court did not want the case to come back to be retried.) The court emphasized that "this [was] not a close case for voluntary manslaughter."

Proceeding to the sentence, the court first denied the motion under *Romero* to strike the strike. The court stated the

7

defendant "previously served a prior prison term. The defendant also has become more violent over time. And his record of violent felonies from robbery to murder demonstrate his increased seriousness."

The court then denied the motion to strike the five-year enhancement for defendant's previous serious felony conviction (§ 667, subd. (a)), stating: "This is a discretionary imposition. And the court's viewing of the totality of the defendant's history and record reimposes the [five-year] enhancement."

Next, the court denied the defense's request to to reduce the 25-year-to-life firearm enhancement (§ 12022.53) to a lesser gun enhancement. (The defense resentencing motion contended that, "[i]f the court is not inclined to strike and dismiss the gun enhancement altogether under its [section] 1385 power, as requested . . . , imposing the lesser-included gun use enhancement under [section] 12022.53, subsection (b), still accounts for and sufficiently punishes [defendant's] conduct in this case"; "it would still mean that [defendant] still has over two decades to serve before reaching the parole board.")

The court made no finding that dismissal of either enhancement would endanger public safety.

On the firearm enhancement, the court observed that defendant cited the district attorney's policy "of not desiring to impose the 25-year-to-life gun enhancement," but stated that "Mr. Gascon's internal office policy is not the law. The law is what is stated in the statute. And the jury found beyond a reasonable doubt that the defendant used a gun to kill the unarmed victim. [¶] That being the case, the salient facts of the case can be summarized in the Court of Appeal decision affirming the sentence. . . . [¶] . . . The decision is the law of the case."

8

Finally, the court stated that "S.B. 483 requires this court to strike a 667.5(b) [prior prison term] enhancement, which the court will, and re-sentence the defendant."

The court then resentenced defendant to 80 years to life, striking the one-year prior prison term enhancement "as a matter of law," but otherwise imposing the same sentence it had initially imposed.

Defendant filed a timely appeal.

## DISCUSSION

### 1.    The Legal Principles

#### a.    Section 1385(c)

As described earlier, section 1385(c) provides that the court "shall dismiss an enhancement if it is in the furtherance of justice to do so," unless dismissal is prohibited by an initiative statute. (§ 1385(c)(1).)

In exercising its discretion under section 1385(c), "the court shall consider and afford great weight to evidence offered by the defendant to prove" that any of nine "mitigating circumstances" is present.  (§ 1385(c)(2).)  "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."  (*Ibid.*)

" 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  (§ 1385(c)(2).)

We quote the full text of the mitigating circumstances in section 1385(c)(2) relevant to this appeal:

"(B) Multiple enhancements are alleged in a single case.  In this instance, all enhancements beyond a single enhancement shall be dismissed.

9

"(C) The application of an enhancement could result in a sentence of over 20 years.  In this instance, the enhancement shall be dismissed."

**b.**    *Walker*

The California Supreme Court has recently described the principles that govern a trial court's exercise of sentencing discretion under section 1385(c).  It is now clear that a trial court may rely on "countervailing aggravating factors, apart from a danger to public safety, to uphold an enhancement, despite the presence of one or more mitigating circumstances." (*Walker, supra,* 16 Cal.5th at p. 1029.)

*Walker* concluded that "[s]pecifically, absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*Walker, supra,* 16 Cal.5th at p. 1029.)  The court continued:  "In other words, if the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Ibid.,* quoting *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098, review granted Apr. 12, 2023, S278894, review dism. Oct. 23, 2024.)

**c.**    **Other relevant precedents**

Both of the mitigating circumstances defendant raises, unlike the other seven, contain the words, "shall be dismissed." *Walker* noted that language, but did not consider whether a mitigating circumstance with those words was entitled to a

different construction than the others.[1]  (*Walker, supra,*
16 Cal.5th at p. 1035, fn. 5.)  However, Court of Appeal cases
decided before *Walker* have done so, and all of them, on varying
facts, have rejected the proposition that dismissal of all but one
enhancement, and/or enhancements resulting in a sentence of
more than 20 years, is mandatory.  (E.g., *People v. Mazur* (2023)
97 Cal.App.5th 438, 445, review granted Feb. 14, 2024, S283229,
review dism. Oct. 30, 2024 (*Mazur*); see also *People v. Cota* (2023)
97 Cal.App.5th 318, 335 (*Cota*) [argument that the phrase "shall
be dismissed" is mandatory and requires dismissal of all
enhancements beyond a single enhancement "has been rejected
by every court that has considered it"].)

**2.     This Case**

On appeal, defendant contends his sentence "was illegal
because it included multiple enhancements and exceeded 20
years."  He asks this court to "reverse the judgment and remand
with instructions to strike the firearm enhancement imposed
under section 12022.53, subdivision (d) because it increased the
sentence beyond 20 years."[2]  Elsewhere he claims that the

---

[1]     *Walker* noted that section 1385(c)(2)(B) provides that "when
'[m]ultiple enhancements are alleged in a single case . . . all
enhancements beyond a single enhancement *shall* be
dismissed.' "  (*Walker, supra,* 16 Cal.5th at p. 1035, fn. 5.)  *Walker*
observed that the defendant had not made any assertion that
section 1385(c)(2)(B)'s " 'shall be dismissed' language entitles that
mitigating circumstance to a different construction than the
others, and we have no occasion to consider that question here."
(*Walker,* at p. 1035, fn. 5.)

[2]     To be clear, on its face section 1385(c)(2)(C) applies only
when "*application of an enhancement* could result in a sentence of

11

sentences "for all of the enhancements must be dismissed," and states the issue as "whether the word 'shall' in [section 1385](c)(2)(B) and (C) requires" dismissal of one of the enhancements.

As may be apparent from the precedents just cited, we reject defendant's assertions. In the end, his claim is that the authorities—all of which conclude the word "shall" does not require mandatory dismissal—were wrongly decided. We think not.

We see no reason to opine at length on this point. Instead, we refer the reader to several cases that involve one or both of the mitigating circumstances defendant raises here. These cases discuss at length the statutory language and the legislative history supporting the conclusion that use of the word "shall" in section 1385(c)(2)(B) and (C) does *not* "require[] the trial court to dismiss all but one of the sentencing enhancements and/or any enhancement that could result in a sentence of more than 20 years." (*People v. Anderson* (2023) 88 Cal.App.5th 233, 239, 239-241, review granted Apr. 19, 2023, S278786, review dism. Oct. 23, 2024; see also *Mazur, supra,* 97 Cal.App.5th at pp. 445-447; *Cota, supra,* 97 Cal.App.5th at pp. 335-338.)

---

over 20 years." (Italics added.) Here, the base term on the murder charge was 25 years to life (doubled), so it is not the application of the enhancement that "could result in" a sentence of over 20 years. (See Couzens et al., Sentencing California Crimes (The Rutter Group 2024) ¶ 12:11.F.3. ["There will be no entitlement to relief unless it is the application of the term for the enhancement that results in a sentence of longer than 20 years."].)

*Mazur* is particularly apt. *Mazur,* citing *Anderson* and other cases, makes several points. *Mazur* agrees with other cases that the statutory phrase "shall be dismissed" cannot be read in isolation. (*Mazur, supra,* 97 Cal.App.5th at p. 445.) "Construed as a whole, the statute makes clear that all the mitigating circumstances listed in [section 1385](c)(2) merely guide the court's discretion in determining whether a dismissal is in furtherance of justice." (*Ibid.*) The "shall be dismissed" language "only requires the court to dismiss the enhancement if it first finds that dismissal is 'in the furtherance of justice.'" (*Ibid.*) The trial court here made no such finding; to the contrary, the trial court made clear its view that dismissal of more than the one-year enhancement was *not* in the furtherance of justice.

Further, *Mazur,* like other cases, rejected the contention that dismissal of multiple enhancements (or an enhancement that could result in a sentence of more than 20 years) is mandatory "whenever the court makes no finding that it would endanger public safety." (*Mazur, supra,* 97 Cal.App.5th at p. 445.) *Mazur* explains: "The 'endanger public safety' language applies only as an exception to the requirement that the court must give 'great weight' to the presence of any mitigating circumstance. (§ 1385, subd. (c)(2).) But the controlling 'furtherance of justice' standard is broader and allows the court to consider factors beyond public safety in exercising its discretion whether to dismiss an enhancement, including the nature and circumstances of the crimes and the defendant's background, character, and prospects." (*Id.* at p. 446.) That is exactly what the trial court did here.

*Mazur,* in rejecting the defendant's contrary argument, also observed: "[W]e would have to construe the phrase 'weighs

13

greatly' to mean 'weigh[s] *dispositively*' for the two mitigating circumstances listed in [section 1385](c)(2)(B) and (C), but not for the other seven mitigating circumstances.  [Citation.]  'But that is not what the statute says, and we are not allowed to rewrite the statute.' " (*Mazur, supra,* 97 Cal.App.5th at pp. 445-446.)

Mazur also points out that the purpose of section 1385 " 'is to grant trial court *discretion* to dismiss enhancements,' " and continues:  " 'And the purpose of Senate Bill No. 81 . . . is to encourage exercise of that discretion by making dismissal mandatory *if it is in the furtherance of justice to do so.*' [Citations.]  'In other words, the dismissal of the enhancement is conditioned on the court's finding dismissal is in the interest of justice.' [Citation.]  '[T]he ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement.' " (*Mazur, supra,* 97 Cal.App.5th at p. 446.)

Here, the trial court explained at length the bases for declining to dismiss (or reduce) any enhancements (see *ante,* at pp. 7-9), and the court clearly did not find that dismissal of either of them would be "in the furtherance of justice."  We see no abuse of discretion.

## DISPOSITION

The judgment is affirmed.


GRIMES, J.


WE CONCUR:



STRATTON, P. J.        WILEY, J.


14